# EXHIBIT B

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
08/20/2025 - 1:05PM
Linda Myhre Enlow
Thurston County Clerk

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
THURSTON COUNTY

| | |
|---|---|
| STEPHEN LISS and JOSHUA TAYLOR, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LENOVO (UNITED STATES), INC.,<br><br>Defendant. | Case No.: 25-2-03220-34<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Stephen Liss and Joshua Taylor, on their own behalf and on behalf of others similarly situated, on information and belief except to their own experiences and matters of public record, complains of Defendant Lenovo (United States), Inc. as follows:

## I. INTRODUCTION

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2. Among other things, CEMA prohibits transmitting a commercial email to a Washington resident's email address that "[c]ontains false or misleading information in the subject


**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

line." RCW 19.190.020(1)(b).

3. Defendant Lenovo (United States), Inc. ("Lenovo") does just what CEMA prohibits.

4. Lenovo bombards Washington consumers, including Plaintiffs, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with Lenovo's marketing for fear of missing out and chokes consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

6. And through this deceptive time-sensitivity, Lenovo falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7. Plaintiffs challenge Lenovo's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II. JURISDICTION AND VENUE

8. The Court has jurisdiction of this case under RCW 2.08.010.

9. Venue is proper in Thurston County under RCW 4.12.025(1)(d) because the corporate defendant's registered agent for service of process in Washington is located in Thurston County.

## III. PARTIES

10. Plaintiff Stephen Liss is a resident of Lincoln County, Washington.

11. Plaintiff Joshua Taylor is a resident of Mason County, Washington.



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

12. Defendant Lenovo (United States), Inc., is a corporation incorporated in Delaware with its principal place of business at 8001 Development Dr., Morrisville, NC, 27560.

13. Defendant's registered agent for purposes of service within Washington State is located at 711 Capitol Way S, Suite 204, Olympia, WA 98501.

## IV. FACTUAL ALLEGATIONS

### A. CEMA protects Washington consumers from deceptive spam emails.

14. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

15. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

16. In the nearly three decades since, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

17. And the problems are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

18. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

19. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

20. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice"



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

21. Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

22. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

23. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

24. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

25. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

26. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

27. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

28. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

29. CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

30. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The subject lines of Lenovo's marketing emails make false time scarcity claims.**

31. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

32. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patters to Light*, *supra* para. 26, at 22.

33. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might



Smith & Dietrich Law Offices PLLC
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

miss opportunities." *Online Choice Architecture*, *supra* para. 26, at 26.

34. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

35. Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

36. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

37. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

38. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

39. These false time scarcity claims are a staple of Lenovo's email scheme to corral consumers to purchase its products, as the following examples demonstrate.

40. On Memorial Day 2024 (May 27), Lenovo sent consumers a mass email that contained the subject heading: "Last Call!! Up to 62% Off."

41. The clear implication of this email was that the advertised sale was expiring that day.

42. However, the fine print of the email admitted that the sale would not end until June 3, 2024.

43. Thus, the fine print of the May 27 email revealed the false and misleading nature of the subject heading's expression of urgency.

44. On the following day, May 28, Lenovo sent a follow-up email with the subject



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

heading: “It ain’t over yet! The sale goes through Sunday. There’s still time to save up to 62%”

45. The reference to “Sunday” in the May 28 email indicated that the sale would not end until a full six days after Memorial Day.

46. The May 28 email also exposed the false and misleading nature of the representation in the May 27 email that the advertised sale was about to end.

47. On Labor Day 2024 (September 2), Lenovo sent consumers a mass email that contained the subject heading: “Final hours to save this Labor Day!”

48. The clear implication of this email was that the advertised sale was expiring that day.

49. However, on the following day, September 3, Lenovo sent an email that contained the subject hearing: “Extended Sale Alert!” The body of the email stated that “The Labor Day Sale’s not over yet!” and that deals would continue through Sunday – a full six days after Labor Day.

50. The September 3 email exposed the false and misleading nature of the representation in the September 2 email that the advertised sale was about to end.

51. On October 28, 2024, Lenovo sent consumers a mass email that contained the subject heading: “Last Call for Epic deals!” The body of the email advertised a “Cyber Savings Event” with deals up to 75% off.

52. The clear implication of this email’s reference to “Last Call” was that consumers needed to act immediately to access the advertised sale.

53. However, the fine print of the email admitted that the sale would not end until November 4, 2024.

54. Thus, the fine print of the October 28 email revealed the false and misleading nature of the subject heading’s expression of urgency.



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

55. On November 1, 2024, Lenovo sent consumers a mass email that contained the subject heading: "Ends Sunday: Up to 75% off!"

56. The body of this email advertised the exact same "Cyber Savings Event" as the October 28 email while the header indicated that the event would run until at least November 3.

57. The November 1 email also exposed the false and misleading nature of the representation in the October 28 email that the advertised sale was about to end.

58. On November 29, 2024, Lenovo sent consumers an email with the urgent subject heading; "Final Hours Up to 68% Off."

59. However, the body of the email revealed that the Black Friday sale in question would actually run through the following day.

60. On November 30, Lenovo sent consumers another email concerning the same sale with the subject heading: "Last chance! Up to 68% off".

61. Lenovo sent consumers a second email on November 30 concerning the same sale with the subject heading: "Kiss these deals goodbye soon!"

62. The November 30 emails exposed the false and misleading nature of the representation in the November 29 email that the advertised sale was in its final hours.

63. On December 9, 2024, Lenovo sent consumers a mass email that contained the subject heading: "It starts now! 4 days of holiday deals! Up to 56% off for 4 days only"

64. On December 12, 2024, Lenovo sent a follow-up email with the subject heading: "Final Hours Up to 56% off Ending soon – shop now!"

65. However, just four days later, on December 16, 2024, Lenovo sent a third email with the subject heading "Ho Ho HURRY! Top tech gifts up to 56% off! Festive deals to make your season bright."

66. The December 16 email exposed the false and misleading nature of the



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

representation in the December 9 email that the holiday sale would only last for "4 days only."

67. The December 16 email exposed the false and misleading nature of the representation in the December 12 email that the holiday sale was in its "final hours."

68. On February 19, 2025, Lenovo sent consumers a mass email that contained the subject heading: "Final Hours Up to 55% ends at midnight."

69. But just two days later, on February 21, 2025, Lenovo sent consumers a mass email that contained the subject heading "Extended Weekend Sale Save up to 55% off."

70. The February 21 email exposed the false and misleading nature of the representation in the February 19 email that the sale was in its "final hours."

71. On March 21, 2025, Lenovo sent consumers a mass email that contained the subject heading: "You unlocked an extra 5% off sitewide. Redeem it by Sunday night."

72. March 21, 2025, was a Friday. The next Sunday was March 23, 2025.

73. The body of this March 21 email mentioned the checkout code LENOVOFLASHWKD.

74. Exactly one week later, on March 28, 2025, Lenovo blasted consumers with an email that contained the subject heading: "Extra 5% off sitewide ends Sunday. Your last chance to unlock this coupon."

75. The body of this March 28 email also mentioned the checkout code LENOVOFLASHWKD.

76. The March 28 email demonstrated the false and misleading nature of the March 21 email's suggestion that consumers had to immediately redeem the provided checkout code.

77. These and other examples of Lenovo's commercial emails whose subject lines contain false or misleading statements are attached to this Class Action Complaint as Exhibit A.



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

**C. Lenovo knows when it sends emails to Washington residents.**

78. A sophisticated commercial enterprise, like Lenovo, who is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly with its knowledge.

79. First, the sheer volume of Lenovo's email marketing put it on notice that Washington residents would receive its emails. Since 2022, Lenovo has been blasting out marketing emails at a rate averaging roughly (at least) 300 per year.

80. Second, Lenovo may obtain location information tied to email addresses when consumers make purchases from Lenovo through digital platforms, including Lenovo's website, or otherwise self-report such information to Lenovo.

81. Third, Lenovo may obtain location information tied to email addresses by tracking the IP addresses of devices used to open Lenovo's emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/). Specifically, Lenovo appears to use the platforms Bluecore and SendGrid to manage its email marketing campaigns. Platforms like this allow Lenovo to identify anyone who receives its marketing emails, determine who opens them, and track who clicks on any links within them.

82. Lenovo is likely able to infer the general geographic location of recipients by state based on their IP address at the time of email open or link click.

83. Fourth, Lenovo may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

84. Fifth, Lenovo may obtain location information tied to email addresses by using



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

"identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

85. Sixth, Lenovo may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

86. It is thus highly probable that a seller of Lenovo's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

### D. Lenovo violated Plaintiffs' right under CEMA to be free from deceptive commercial emails.

87. Lenovo has bombarded Plaintiffs with commercial emails whose subject lines contain false or misleading statements in violation of their right to be free from such annoyance and harassment under CEMA.

88. Plaintiff Liss received the "Final Hours Up to 68% Off" email described in paragraph 58 above.

89. Plaintiff Taylor received the "Final Hours Up to 55% ends at midnight" email described in paragraph 68 above.

90. These emails were false or misleading in violation of CEMA, for misrepresenting the timing of the deals, as further described in ¶¶ 58–62 and 68–70.

91. These emails contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V. CLASS ALLEGATIONS

92. Plaintiffs bring this action under Civil Rule 23 on behalf of the following putative class ("Class"):



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

> All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

93. Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiffs; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

94. The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

95. Plaintiffs reserve the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

96. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

97. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

98. Plaintiffs' claims are typical of the Class's because, among other reasons, Plaintiffs and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

99. Plaintiffs will fairly and adequately protect the Class's interests because, among



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

other reasons, Plaintiffs share the Class's interest in avoiding unlawful false or misleading marketing; have no interest adverse to the Class; and have retained competent counsel extensively experienced in consumer protection and class action litigation.

100. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiffs and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiffs and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

101. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

102. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action on as a class presents no special difficulties.

## VI. CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

103. Plaintiffs incorporate and reallege paragraphs 1–102 above.

104. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

105. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

106. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

107. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiffs and putative members were Washington residents through "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address". RCW 19.190.020(b)(2).

108. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

109. For Defendant's violation of CEMA, Plaintiffs are entitled to all available relief, including an injunction against further violations.

## **Second Claim to Relief**

### Violation of the Consumer Protection Act, RCW 19.86.020

110. Plaintiffs incorporate and reallege paragraphs 1–102 above.

111. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

112. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

113. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

114. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

115. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

116. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

117. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

118. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

119. For Defendant's violation of the CPA, Plaintiffs and putative members are entitled to an injunction against further violations; the greater of Plaintiffs' actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

120. Plaintiffs will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

## VIII. PRAYER FOR RELIEF

Plaintiffs asks that the Court:

A. Certify the proposed Class, appoint Plaintiffs as Class representatives, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiffs' and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C. Enter a judgment in Plaintiffs' and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiffs costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.

Date: August 20, 2025.

Respectfully submitted,

By: /s/ Walter Smith
Walter Smith, WSBA #46695
**Smith & Dietrich Law Offices, PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Telephone: (360) 915-6952
Email: walter@smithdietrich.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
ibensberg@cohenmalad.com

J. Gerard Stranch, IV*
Michael C. Tackeff*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com

Samuel J. Strauss WSBA #46971
Raina C. Borrelli*
**STRAUSS BORRELLI, LLP**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

*Attorneys for Plaintiffs*
* Applications for admission *pro hac vice* forthcoming

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
08/20/2025 - 1:05PM
Linda Myhre Enlow
Thurston County Clerk

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
THURSTON COUNTY

STEPHEN LISS and JOSHUA TAYLOR, on their own behalf and on behalf of others similarly situated,

Plaintiffs,

vs.

LENOVO (UNITED STATES), INC.,

Defendant.

Case No.: 25-2-03220-34

**CLASS ACTION COMPLAINT**

**EXHIBIT A**

| **Date** | **Subject Line** |
|---|---|
| 5/27/24 | Last Call!! Up to 62% Off |
| 5/28/24 | It ain't over yet! The sale goes through Sunday. There's still time to save up to 62% |
| 9/2/24 | Final hours to save this Labor Day! |
| 9/3/24 | Extended Sale Alert! |
| 10/28/24 | Last Call for Epic deals! |
| 11/1/24 | Ends Sunday: Up to 75% off! |
| 11/29/24 | Final Hours Up to 68% Off |
| 11/30/24 | Last chance! Up to 68% off |
| 11/30/24 | Kiss these deals goodbye soon! |



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

| | |
|---|---|
| 12/9/24 | It starts now! 4 days of holiday deals! Up to 56% off for 4 days only |
| 12/12/24 | Final Hours Up to 56% off Ending soon – shop now! |
| 12/16/24 | Ho Ho HURRY! Top tech gifts up to 56% off! Festive deals to make your season bright |
| 2/19/25 | Final Hours Up to 55% ends at midnight |
| 2/21/25 | Extended Weekend Sale Save up to 55% off |
| 3/21/25 | You unlocked an extra 5% off sitewide. Redeem it by Sunday night |
| 3/28/25 | Extra 5% off sitewide ends Sunday. Your last chance to unlock this coupon |



**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952