Jonas B. Jacobson (WSBA #62890)
jonas@dovel.com
Simon Franzini (WSBA #63689)
simon@dovel.com
Martin Brenner (Admitted *Pro Hac Vice*)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Counsel for Plaintiffs*

[Additional counsel listed on signature page]

The Honorable Jamal N. Whitehead

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

JOSHUA TAYLOR and GIAUNIE HENDRIX, on their own behalf and on behalf of others similarly situated,

        *Plaintiffs,*

    v.

LENOVO (UNITED STATES) INC.

        *Defendant.*

Case No. 3:25-cv-05840-JNW

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**JURY DEMAND**

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## Table of Contents

I. Introduction. ........................................................................................................1

II. Parties. .................................................................................................................2

III. Jurisdiction and Venue. .......................................................................................2

IV. Facts. ..................................................................................................................3

    A. Defendant's false and misleading emails. ..................................................3

        1. Deceptive time limits .......................................................................5

        2. Deceptive discounts....................................................................... 10

    B. Defendant knows when it sends emails to Washington residents. ...................13

    C. Defendant's emails injure consumers and are materially deceptive. ...............14

V. Class Action Allegations.....................................................................................18

VI. Claims.................................................................................................................19

    Count 1: Violations of Washington's Commercial Electronic Mail Act ...........................19

    Count 2: Violations of the Washington Consumer Protection Act via misleading emails............20

VII. Jury Demand. ......................................................................................................22

VIII. Prayer for Relief...................................................................................................22

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

**I.    Introduction.**

1.      Deceptive emails plague consumers' inboxes. In 1998, the Washington legislature, concerned with deception in emails, and annoyance and harassment through spam email, enacted the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, which, among other things, prohibits any person from sending a commercial email with a false or misleading subject line. RCW 19.190.020.

2.      For marketing emails that advertise sales or product discounts, CEMA prohibits subject lines that misrepresent when a purported sale ends and the size of the true discount. *Brown v. Old Navy LLC*, 4 Wn. 3d 580 (Wash. 2025).

3.      Defendant Lenovo (United States) Inc. ("Lenovo") makes, markets, and sells computers, computer accessories, and related products like tablets, monitors, servers, and storage (the "Products").

4.      Defendant Lenovo's email marketing practices violate CEMA. Defendant sends commercial emails to Washington residents on its mailing list. These emails frequently contain subject lines that advertise promotions or discounts Lenovo is offering on its Products. For example, Lenovo's emails contain subject lines like "Up to 49% off, Giveaways, & More!," "Final Days Up to 49% off," "Save up to 50%," and "Last Call!! Up to 62% Off." But the sales do not really end when the emails say they will, and the true discount is not what the emails claims.

5.      These email subject lines are deceptive in at least two ways. First, the subject lines lead reasonable consumers to believe the limited-time sale is ending soon, including by stating that the advertised sale is in its "[f]inal hours." But the advertised discounts are not truly in their final hours or ending soon. Rather, the same discount (or a materially similar discount) is available long after the deceptive email is sent. Second, the subject lines lead reasonable consumers to believe that there is a substantial sale going on and that the regular prices of Lenovo Products are normally much higher. In truth, the Lenovo Products are almost always substantially discounted and the true regular price is just the discounted price.

6.      Lenovo knows that its discounting practices are unlawful. It has already been sued at least three times for fake discounting. *See Ponce v. Lenovo (United States) Inc.*, Case No. 0:16-cv-01000 (D.

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

1    Minn.); *Axelrod v. Lenovo (United States) Inc.*, Case No. 4:21-cv-06770 (N.D. Cal.); *Hermanson v. Lenovo*

2    *(United States) Inc.*, Case No. 4:23-cv-05890 (N.D. Cal.). Nevertheless, Defendant continues to mislead

3    Washington customers with its emails.

4          7.    Plaintiffs are Washington residents who received Lenovo's deceptive email

5    advertisements. Plaintiffs bring this case to protect Washington residents from Defendant's false and

6    misleading emails about its purported discounts.

7    **II.    Parties.**

8          8.    Plaintiff Joshua Taylor is domiciled in Mason County, Washington.

9          9.    Plaintiff Giaunie Hendrix is domiciled in Seattle, Washington.

10         10.    The proposed Class includes citizens of Washington.

11         11.    Defendant Lenovo (United States) Inc. is a Delaware company with its principal place of

12   business at 8001 Development Drive, Morrisville, North Carolina, 27560.

13   **III.    Jurisdiction and Venue.**

14         12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in

15   controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which

16   one or more members of the proposed class are citizens of a state different from Defendant.

17         13.    This Court has personal jurisdiction over Lenovo. Lenovo advertises and sells its

18   products in Washington, and knowingly sends its marketing emails to Washington consumers. Plaintiffs'

19   claims arise out of Defendant's contacts with this forum; specifically, Defendant's transmission of

20   commercial electronic mail messages to recipients in Washington.

21         14.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or

22   omissions giving rise to the claims occurred in this District. Plaintiff Hendrix received false and

23   misleading commercial emails while in this District. Venue is also proper under 28 U.S.C. § 1391(d)

24   because Defendant would be subject to personal jurisdiction in this District if this District were a

25   separate state. Additionally, venue is proper in this District under 28 U.S.C. § 1441(a) because

26   Defendant removed this case from the Superior Court for the State of Washington, King County, and

27   this is the judicial district that embraces that court.

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

2

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

1    **IV.    Facts.**

2        **A.    Defendant's false and misleading emails.**

3        15.    Lenovo is one of the largest computer manufacturers in the world. It sells its products

4    directly to consumers through its website, www.lenovo.com.

5        16.    Lenovo advertises percent-off sales throughout its websites, including through website

6    banners, on a "Deals" page, on product listing pages, and throughout the checkout process. For

7    example:

8

9

10



11

12

13

14

15

16                    *Captured February 25, 2024*

17

18

19

20

21

22

23

24

25

26                    *Captured May 29, 2024*

27

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

*Captured May 29, 2024*

17.    Lenovo also advertises its percent-off sales through emails to recipients on its mailing list. These emails include subject lines like "Up to 49% off, Giveaways, & More!," "Final Days Up to 49% off," "Our 4-Day Sale Event starts now!," and other similar subject lines advertising percent-off discounts for a limited time.

18.    Lenovo's marketing emails are false and misleading in multiple ways.

19.    <u>Deceptive time limits.</u> The subject lines in Lenovo's marketing emails frequently say that the advertised sale will end imminently (*e.g.*, "Final Days," "Last Call," "Final hours"). This drives sales by motivating consumers to make a purchase before the purported discount expires. But the sales don't actually end when the subject lines say they will. Instead, (a) the sale actually continues for longer than stated in the subject line; (b) Lenovo extends the sale after the fake deadline has passed; or (c) Lenovo

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

1    quickly replaces the advertised sale with a materially similar sale. This allows Lenovo to profit from a

2    false sense of urgency. Consumers are being tricked into thinking they must buy during the time-limited

3    sale to get the advertised discount.

4        20.    Deceptive discounts. Lenovo's email subject lines also frequently say that consumers will

5    receive a substantial discount (*e.g.*, "Up to 49% off"). This makes reasonable consumers believe that they

6    are getting a discount off Defendant's regular prices (the prices that most consumers have to pay). But

7    in truth, Defendant offers substantial discounts so frequently that consumers are not really getting the

8    advertised discounts off the regular prices because the items are discounted so frequently that the true

9    regular price is the advertised discount price. This allows Defendant to profit from a false sense of value,

10   because consumers make purchases under the false believe that they are receiving a substantial discount

11   off the regular prices.

12   **1.    Deceptive time limits**

13       21.    Lenovo regularly puts false time limits for its sales in its email subject lines.

14       22.    For example, Defendant will send email subject lines containing urgent warnings like

15   "Last Call!! Up to 62% Off," "Final hours to save this Labor Day!," "Ends Sunday: Up to 75% off!,"

16   and "Up to 56% off for 4 days only." But as described above, the end dates stated or implied by the

17   subject lines are either misleading, extended by Lenovo after they pass, or followed by a materially

18   similar sale.

19       23.    Lenovo frequently sends email subject lines conveying that its sales are ending soon

20   when, in fact, the sale is scheduled to continue for longer than the subject line represents.

21   *Example 1*

22       24.    On Memorial Day 2024 (May 27), Lenovo sent consumers a mass email that contained

23   the subject line: "Last Call!! Up to 62% Off."

24       25.    The words "Last Call!" implied that it was consumers' last chance to get the sale (that it

25   was expiring that day). This would make sense to consumers, as May 27 was Memorial Day and the

26   Monday after a holiday weekend (the natural end date for a holiday sale). The words "Last Call!" also

27

implied that this would be the last email consumers would receive about their opportunity to take advantage of the sale. But none of this was true.

26. The next day, on May 28, Lenovo sent a follow-up email with the subject line: "It ain't over yet! The sale goes through Sunday." So, contrary to the subject line of the May 27 email, May 27 was not in fact the "Last Call!" for the sale. The May 28 email acknowledged this: with the line "It ain't over yet!" Lenovo was acknowledging that its May 27 email had led consumers to believe that the sale was in fact over, but that contrary to consumers' expectations the sale was "not over yet." In fact, the sale would continue until at least midnight on June 3—another six days after the May 27 email was sent. The May 27 email subject line had created—and was intended to create—a false sense of urgency.

*Example 2*

27. On October 28, 2024, Lenovo sent consumers a mass email that contained the subject line: "Last Call for Epic deals!" The body of the email advertised a "Cyber Savings Event" with deals up to 75% off.

28. The words "Last Call" implied that it was consumers' last chance to get the "Epic deals" (that were expiring soon). The words "Last Call!" also implied that this would be the last email consumers would receive about their opportunity to take advantage of the sale. But none of this was true.

29. A few days later, on November 1, 2024, Lenovo sent consumers a follow-up email with the subject line: "Ends Sunday: Up to 75% off!" The body of this email advertised the exact same "Cyber Savings Event" as the October 28 email while the subject line indicated that the event would run until at least Sunday, November 3. So, contrary to the subject line of the October 28 email, October 28 was not the "Last Call" for the "Epic deals." The sale actually continued for at least six days after the purported "Last Call." The October 28 email subject line had created—and was intended to create—a false sense of urgency.

*Example 3*

30. On November 29, 2024, Lenovo sent consumers an email with the subject line "Final Hours Up to 68% Off."

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

1    31.    The words "Final Hours" implied that it was consumers' last chance to get the sale (that

2    it was expiring that day). This would make sense to consumers, as that day was Black Friday (the natural

3    end date for a Black Friday sale).

4    32.    But the next day, on November 30, Lenovo sent consumers another email concerning

5    the same sale with the subject line: "Last chance! Up to 68% off."

6    33.    Lenovo sent consumers a second email on November 30 concerning the same sale with

7    the subject line: "Kiss these deals goodbye soon!"

8    34.    So, contrary to the November 29 subject line, the Black Friday sale was not in its "Final

9    Hours" and continued to be available. Like the email subject lines discussed above, the November 29

10    subject line created—and was intended to create—a false sense of urgency surrounding Lenovo's sales.

11                                    *          *          *

12    35.    Lenovo also frequently sends email subject lines stating that a sale is ending imminently

13    (e.g., "Final hours") followed by a later email that "Extend[s]" the sale that was purportedly supposed to

14    end.

15    36.    For example, on Labor Day 2024 (September 2), Lenovo sent consumers a mass email

16    that contained the subject line: "Final hours to save this Labor Day!" This expressly told consumers that

17    the opportunity "to save" would end that day (Labor Day). But the following day, September 3, Lenovo

18    sent an email with the subject line "Extended Sale Alert!" The body of the September 3 email stated that

19    "The Labor Day Sale's not over yet!" and that deals would continue through Sunday—six days after

20    Labor Day.

21    37.    As another example, on February 19, 2025, Lenovo sent consumers a mass email that

22    contained the subject line "Final Hours," advertising that the sale of "up to 55% off" was to end that

23    night. But the next day, on February 20, 2025, Lenovo sent Washington consumers a mass email that

24    contained the subject line "Extended Weekend Sale," which again advertised up to 55% off.

25    38.    These extensions are not spontaneous, isolated events. They are common, systematic,

26    and pre-planned (i.e., when Lenovo's subject lines tell consumers that the sale is over, Lenovo knows it

27    plans to extend it). The sales are not truly scheduled to end on the initial advertised end date and the

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

advertised "extensions" are fake because Lenovo always plans for the sale to be available until the "extended" end date.

39.     So the September 3 and February 21 email subject lines stating that those sales had been extended were false and misleading because Lenovo had long planned to offer the purported sales past the initially advertised end date, the sales were not truly scheduled to end on the initially advertised end date, and the purported "extension" was fake.

40.     Similarly, the September 2 and February 19 email subject lines stating that those sales were in the "Final hours" were also false and misleading because Lenovo knew that it was going to "extend" the sales and that the sales were not in fact in their "Final hours."

*     *     *

41.     Lenovo also frequently sends email subject lines advertising that a sale is ending imminently, only to quickly follow that sale with a materially similar sale.

*Example 1*

42.     On December 9, 2024, Lenovo sent consumers a mass email that contained the subject line: "It starts now! 4 days of holiday deals!" and advertised a sale of up to 56% off. This told consumers that the opportunity to get holiday deals of 56% off would end in four days (by December 12).

43.     On December 12, 2024, Lenovo sent a follow-up email with the subject line: "Final Hours Up to 56% off." This confirmed what Lenovo had said in the December 9 email: that the opportunity to save 56% was ending December 12, to get this savings, consumers had to hurry to make their purchases. This was not true.

44.     Four days later, on December 16, 2024, Lenovo sent a mass email with the subject line "Ho Ho HURRY! Top tech gifts up to 56% off!" So just days after telling consumers that the opportunity to save 56% with "holiday deals" was over, Lenovo was advertising the opportunity to save 56% for the holidays.

45.     The December 16 email exposed the false and misleading nature of the representation in the December 9 email subject line that consumers had only four days to benefit from the advertised "holiday deals." In reality, a materially identically sale was available almost immediately after the deals

1  advertised in the December 9 email "ended." In truth, the advertised sale was not really ending soon and

2  it did not truly last for only four days.

3      46.    The December 16 email also exposed the false and misleading nature of the

4  representation in the December 12 email subject line's statement that the holiday sale was in its "final

5  hours" and that consumers needed to hurry to benefit from it. Instead, a materially identical sale

6  continued to be available to consumers.

7      47.    The time pressure that Lenovo created with its earlier December 9 and 12 emails was

8  artificial. This was by design: to drive sales with a false sense of urgency.

9  *Example 2*

10     48.    On March 21, 2025, Lenovo sent consumers a mass email that contained the subject line:

11 "You unlocked an extra 5% off sitewide." It advertised a coupon code that purportedly ended on

12 "Sunday."

13     49.    March 21, 2025, was a Friday. The next Sunday was March 23, 2025.

14     50.    The body of this March 21 email mentioned the checkout code

15 LENOVOFLASHWKD.

16     51.    Exactly one week later, on March 28, 2025, Lenovo blasted consumers with an email that

17 contained the subject line: "Extra 5% off sitewide ends Sunday." The body of this March 28 email also

18 mentioned the checkout code LENOVOFLASHWKD.

19     52.    So just days after the "extra 5% off" coupon code purportedly expired, customers could

20 use the same coupon code to get the same "[e]xtra 5% off sitewide."

21     53.    The March 28 email exposed the false and misleading nature of the representation in the

22 March 21 email that customers had to immediately redeem the provided checkout code. Customers did

23 not have to redeem the code by Sunday, March 23, because Lenovo followed that advertised sale with

24 an identical sale just a few days later.

25     54.    Again, the time pressure that Lenovo created with its March 21 email was artificial. This

26 was by design: to drive sales with a false sense of urgency.

27

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

**2.    Deceptive discounts**

55.    Defendant's emails are deceptive in a second way: the amount of savings they advertise is false and misleading.

56.    For example, Lenovo sends emails that advertise savings like "Up to 49% off" or "Up to 54% Off." Defendant's emails lead reasonable consumers to believe that, if they buy during the sale, they will get a substantial discount (*e.g.*, 49% or 54%) off Defendant's regular prices (the prices most consumers have to pay to buy the Products from Lenovo).

57.    But in truth, Lenovo offers these discounts extremely frequently. Plaintiffs' counsel conducted an investigation into the frequency of Defendant's advertised discounts from April to December 2025. The results of this investigation are illustrated in the table below:

| Purported Sale | Purported Start Date | Purported End Date |
|---|---|---|
| Weekend Sale Event | April 11, 2025 | April 14, 2025 |
| 4-Day Sale | April 14, 2025 | April 18, 2025 |
| Weekend Sale | April 18, 2025 | April 21, 2025 |
| Innovative Tech Savings Sale | April 21, 2025 | May 12, 2025 |
| Think Weekend Sale | May 9, 2025 | May 12, 2025 |
| Early Access Memorial Day Sale | May 12, 2025 | May 19, 2025 |
| Memorial Day Sale | May 19, 2025 | May 26, 2025 |
| 3-Day Sale | May 26, 2025 | May 29, 2025 |
| Extended Weekend Sale | May 30, 2025 | June 9, 2025 |
| Dads & Grads Promotion Sale | June 2, 2025 | June 9, 2025 |
| Ultimate Summer Savings Sale | June 9, 2025 | June 23, 2025 |
| Lenovo 4-Day Sale | June 23, 2025 | June 27, 2025 |
| Weekend Sale | June 27, 2025 | June 30, 2025 |
| Early Access Black Friday in July Sale | June 30, 2025 | July 7, 2025 |

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

| Black Friday in July Sale | July 7, 2025 | July 21, 2025 |
| Back to School Sale | July 21, 2025 | August 24, 2025 |
| Labor Day Sale | August 25, 2025 | September 8, 2025 |
| 4-Day Sale | September 8, 2025 | September 12, 2025 |
| Fall Tech Fest Sale | September 15, 2025 | September 29, 2025 |
| The Big Upgrade Event Sale | September 29, 2025 | October 5, 2025 |
| Semi-Annual Sale | October 6, 2025 | October 20, 2025 |
| 4-Day Sale | October 20, 2025 | October 24, 2025 |
| Black Friday Deal Days | October 27, 2025 | November 24, 2025 |
| Early Access Black Friday Sale | November 24, 2025 | November 27, 2025 |
| Black Friday Sale | November 26, 2025 | November 30, 2025 |
| Cyber Monday Sale | November 30, 2025 | December 2, 2025 |
| Cyber Week Sale | December 2, 2025 | December 8, 2025 |
| 4-Day Sale | December 8, 2025 | December 12, 2025 |
| Weekend Sale | December 12, 2025 | December 15, 2025 |
| Last Chance Sale | December 15, 2025 | December 22, 2025 |
| Winter Savings Sale | December 22, 2025 | January 5, 2026 |

58.     As shown above, except for an occasional few days between sales, Lenovo is almost always offering a purported sale on its Products.

59.     Many of these purported sales are accompanied by coupon codes, or "eCoupons." But when a consumer purchases a product on Defendant's website, the coupon code is automatically applied. So consumers always receive the purported discount price.

60.     These emails frequently advertise the same or materially similar discounts. For example, in 2025, from May 12 to May 19, Defendant offered an Early Access Memorial Day Sale with discounts of up to 54% off. When that sale "ended," Defendant offered its Memorial Day Sale from May 19 to May 26, which also advertised up to 54% off its Products. As soon as the Memorial Day Sale "ended,"

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

Defendant offered a "3-Day Sale," until May 29, in which it advertised up to 54% off its Products. The 3-Day Sale was followed by an "Extended Weekend Sale," which lasted until at least June 9, where Defendant advertised up to 54% off. But even before this, for its "Innovative Tech Savings" sale from April 21 to May 12, Defendant advertised up to 49% off its Products. Before that, from April 14 to April 18, Defendant offered up to 49% off as part of its "4-Day Sale," which itself was preceded by a "Weekend Sale Event" from April 11 to April 14 where Lenovo also advertised up to 49% off. In other words, Defendant advertised purported discounts between up to 49% and 54% off its Products from at least April 11 to at least June 2. This example illustrates a pattern of Defendant's false discounting practices.

61.    When Lenovo advertises its percent-off discounts through emails with subject lines like "Up to 49% off" or "4-Day Sale," reasonable consumers interpret Defendant's sale advertisements to mean that recipients will be getting a discount "off" the former or regular prices that Defendant formerly and usually charges for its Products. In other words, reasonable recipients believe, for example, that they will receive "Up to 49% off" the reference prices that Defendant advertises, and that those reference prices represent the regular prices for the Products (the prices that consumers regularly have to pay to buy the Products). This creates a sense of value and urgency: buy now, and you will receive something worth more than you pay for; wait, and you will pay more for the same thing later.

62.    Because these sales are so frequent, most consumers are in fact paying the supposedly discounted prices. This means that consumers are not really getting the advertised discounts off regular prices (the prices most consumers pay). Instead, they are getting a much smaller discount off the regular price, or no discount at all.

63.    So when Lenovo's email subject lines promise a substantial percentage discount, this is false and misleading.

64.    Only Lenovo has access to all of its pricing and discounting data. Discovery will show that all or the vast majority of Lenovo's Products are rarely if ever sold at its advertised reference prices, that its Products are almost always sold at a purported substantial discount, and that, accordingly, Lenovo's email subject lines advertising these purported discounts are false and misleading.

*        *        *

65.    Defendant is constantly sending commercial emails to recipients on its mailing list. Defendant sends multiple emails to its mailing list each week, many of which include false or misleading subject lines regarding Lenovo's promotions. Based on the emails Defendant sent to Plaintiffs, Defendant has sent at least thousands of emails to Washington recipients with similar false or misleading subject lines as those discussed above.

66.    Defendant also knows what sales it is offering and what sales it plans to offer in the near future. It knows that, in truth, it is not really consumers' last or final chance to get the advertised sales. Defendant also knows how frequently it runs discounts and thus knows that consumers are not really getting the advertised discount off Defendant's regular prices (the prices most consumers pay) and that the sales will not really end when advertised.

67.    Examples of Lenovo's commercial emails with subject lines containing false or misleading statements regarding the purported time limits for Lenovo's sales or purported percent-off discounts are attached to this Class Action Complaint as **Exhibit A**. In addition, Defendant has transmitted more emails containing similar false and misleading subject lines that are not in Plaintiffs' possession, but are in the possession of Defendant.

**B.    Defendant knows when it sends emails to Washington residents.**

68.    Defendant knows or has reason to know that it sends its emails containing false and misleading subject lines to Washington residents.

69.    A sophisticated commercial enterprise, like Lenovo, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly within its knowledge.

70.    First, the sheer volume of email marketing that Lenovo engages in put it on notice that Washington residents would receive its emails.

71.    Second, Lenovo obtains location information tied to email addresses when consumers make purchases from Lenovo through digital platforms, including the Lenovo website, or otherwise

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

1  self-report such information to Lenovo. For example, Washington customers supply Lenovo with their

2  Washington billing and shipping addresses when they make a purchase.

3  72.     Third, Lenovo likely obtains location information tied to email addresses by tracking the

4  IP addresses of devices used to open its emails, which in turn can be correlated to physical location (as

5  illustrated, for example, by the website https://whatismyipaddress.com/). Specifically, Lenovo appears

6  to use the platforms Bluecore and SendGrid to manage its email marketing campaigns. Platforms like

7  these allow Lenovo to identify anyone who receives its marketing emails, determine who opens them,

8  and track who clicks on any links within them.

9  73.     Fourth, Lenovo may obtain location information tied to email addresses by purchasing

10  consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to

11  databases linking email addresses to physical locations, among other identifiers.

12  74.     Fifth, Lenovo may obtain location information tied to email addresses by using "identity

13  resolution" services offered by companies such as LiveRamp, which can connect consumers' email

14  addresses to their physical locations, among other identifiers.

15  75.     Sixth, Lenovo may obtain information that the recipients of its marketing emails are

16  Washington residents because that information is available, upon request, from the registrant of the

17  Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

18  **C.     Defendant's emails injure consumers and are materially deceptive.**

19  76.     Defendant's false and misleading emails result in actual and substantial injury to

20  Plaintiffs. It violates Plaintiffs' statutory right not to receive commercial emails that contain false or

21  misleading subject lines, which the legislature has deemed to be a "matter[] vitally affecting the public

22  interest." RCW 19.190.030(3). Violation of a right that vitally affects the public interest results in actual

23  and substantial harm to Plaintiffs and putative Class members.

24  77.     Defendant's false and misleading emails also clog up Plaintiffs and putative class

25  members' email inboxes with spam emails, waste their limited data space, and invade their privacy.

26  78.     In addition, the Supreme Court of Washington has made clear: "[A]ll Internet users ...

27  bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

14

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

79.    CEMA protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019). CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

80.    Defendant's emails are also deceptive and material to reasonable consumers.

81.    Consumers care about receiving discounts. Receiving a good deal—a discount—is important to consumers, and material to a consumer's purchasing decisions about the Products.

82.    Discounts drive purchases. Consumers are more likely to buy a product when they think they are getting a good deal. They are also willing to pay more for products if they believe the product is worth more than they are paying and that they are getting a substantial discount.

83.    Research confirms that discounts are important to consumers. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[1] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[2]

---

[1] Invesp, How Discounts Affect Online Consumer Buying Behavior (https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/) (last accessed January 4, 2026).

[2] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html) (last accessed January 4, 2026).

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

84.     Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[3, 4] That a discount is ending soon is important to reasonable consumers' purchasing decisions.

85.     The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached."[5]

86.     These types of false scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities."[6]

87.     Under this false time pressure, "consumers might take up an offer to minimize the uncertainty of passing it up."[7]

88.     Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited."[8]

89.     When a reasonable consumer sees Lenovo's emails saying that the discount will end imminently, they expect that if they miss the sale, the discount will not be available again soon. Consumers do not expect that the sale will be extended or that a materially similar sale will quickly replace it. This creates a false sense of urgency to buy that drives sales and profits.

---

[3] CXL, Creating Urgency, (https://cxl.com/blog/creating-urgency/) (increasing urgency by advertising limited time nature of promotion increased conversion rates nearly 300%) (last accessed January 4, 2026).
[4] Adestra, Dynamic email content leads to 400% increase in conversions for Black Friday email (https://uplandsoftware.com/adestra/resources/success-story/dynamic-email-content-leads-to-400-increase-in-conversions-for-black-friday-email/) (400% higher conversation rate for ad that increased urgency via countdown timer) (last accessed January 4, 2026).
[5] *Bringing Dark Patterns to Light* (2022), at p. 22 (https://perma.cc/847M-EY69/) (last accessed January 5, 2026).
[6] *Online Choice Architecture- How Digital Design Can Harm Competition and Consumers* (2022), at p. 26 (https://perma.cc/V848-7TVV/) (last accessed January 5, 2026).
[7] *Id.*
[8] *Id.* at p. 27.

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

90.     Similarly, when a reasonable consumer receives an email subject line advertising a substantial discount, they believe they are getting a discount off Defendant's regular and former prices. They do not expect that the supposedly discounted price is really the regular price. This misleading sense of value drives sales and profits.

91.     This is why Defendant sends these emails. Defendant's email subject lines make Washington consumers more likely to open the emails, read the emails, buy the Products quickly, and be willing to pay more for the Products. This increases demand, drives sales, allows Defendant to sell more Products than it otherwise could, and allows Defendant to charge more than it otherwise could.

92.     Both Plaintiffs received emails from Defendant with false and misleading subject lines related to Defendant's fake discounts. A few examples of the emails with false and misleading subject lines received by Plaintiff Hendrix include: "Up to 49% off, Giveaways, & More!," "Final Days Up to 49% off," "Last call! 4-Day Sale ends tonight," and "Up to 54% off—and then some." Similarly, Plaintiff Taylor received emails with subject lines "Final Hours," "Save up to 60% this week," and "Up to 55% off."

93.     Plaintiffs were not and putative class members are not aware that Defendant's email subject lines are false and misleading. Reasonable consumers are not deceptive discount detectives (nor should they have to be). Reasonable consumers are not monitoring Defendant's emails and website and tracking its discounts to determine whether Defendant is deceiving them about its sales.

94.     Plaintiffs do not want to receive emails with false and misleading subject lines from Lenovo, though they would like to continue to receive and rely on truthful information from Defendant regarding its Products. Due to Defendant's conduct, Plaintiffs cannot tell which emails from Defendant contain truthful information and which emails are spam with false and misleading information designed to spur them into making a purchase. So without a court order requiring Defendant to only send honest emails about its sales, Plaintiffs cannot rely on the emails they receive.

95.     Plaintiffs seek an injunction. Plaintiffs are permitted to seek an injunction because they have no adequate remedy at law. Legal remedies here are not adequate because they would not stop

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

1  Defendant from continuing to transmit emails with false or misleading subject lines to Washington

2  residents.

3  **V.    Class Action Allegations.**

4      96.    Plaintiffs bring the asserted claims on behalf of the proposed Class of:

5  •    all Washington residents who received promotional emails from Lenovo with subject

6      lines advertising the amount or duration of a discount.

7      97.    The following people are excluded from the proposed Class: (1) any Judge or Magistrate

8  Judge presiding over this action and the members of their family; (2) Defendant, Defendant's

9  subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a

10  controlling interest and their current employees, officers and directors; (3) persons who properly execute

11  and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been

12  finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel,

13  and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such

14  excluded persons.

15      98.    Plaintiffs reserve the right to amend the Class definition as discovery reveals additional

16  emails containing false or misleading information in the subject line that Defendant sent or caused to be

17  sent to email addresses held by Washington residents.

18      *Numerosity*

19      99.    The proposed Class contains members so numerous that separate joinder of each

20  member of the Class is impractical. There are at least thousands of Class members in Washington.

21      100.    Class members can be identified through Defendant's electronic mailing lists and public

22  notice.

23      *Predominance of Common Questions*

24      101.    There are questions of law and fact common to the proposed Class.  Common questions

25  of law and fact include, without limitation:

26      (1) whether Defendant's email subject lines regarding its purported discounts are false or

27      misleading;

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

1    (2) whether Defendant's email subject lines violate CEMA;

2    (3) whether Defendant's email subject lines violate the CPA;

3    (4) the greater of actual damages and statutory damages due to Plaintiffs and the proposed Class.

4    *Typicality & Adequacy*

5    102.    Like members of the proposed Class, Plaintiffs received emails from Defendant that

6    contain false or misleading subject lines regarding Defendant's discounts.

7    103.    There are no conflicts of interest between Plaintiffs and the Class.

8    *Superiority*

9    104.    A class action is superior to all other available methods for the fair and efficient

10   adjudication of this litigation because individual litigation of each claim is impractical. It would be

11   unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits,

12   every one of which would present the issues presented in this lawsuit.

13   **VI.    Claims.**

14   **<u>Count 1: Violations of Washington's Commercial Electronic Mail Act</u>**

15   **(By Plaintiffs and the Class)**

16   105.    Plaintiffs incorporate each and every factual allegation set forth above.

17   106.    Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

18   107.    Lenovo is a "person" under CEMA. RCW 19.190.010(11).

19   108.    As alleged more fully above, Lenovo violated CEMA by initiating the transmission of

20   commercial electronic mail messages that contained false or misleading information in the subject line to

21   Plaintiffs' and Class members' electronic mail addresses.

22   109.    Defendant sent these emails to Plaintiffs and Class members for the purpose of

23   promoting Lenovo's Products for sale.

24   110.    Defendant knew or had reason to know that it transmitted such emails to email

25   addresses held by Washington residents, including Plaintiffs.

26   111.    Defendant's acts and omissions violated RCW 19.190.020(1)(b).

27   112.    Defendant's acts and omissions injured Plaintiffs and Class members.

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

113.    The balance of equities favors the entry of permanent injunctive relief against Defendant. Plaintiffs, the members of the Class, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is ongoing as of the date of the filing of this pleading, so without the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur given that Defendant has already been sued multiple times for its fake discounting practices.

114.    Plaintiffs and Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.020(1)(b).

**Count 2: Violations of the Washington Consumer Protection Act via misleading emails**

**(By Plaintiffs and the Class)**

115.    Plaintiffs incorporate each and every factual allegation set forth above.

116.    Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

117.    Plaintiffs and Class members are "persons" within the meaning of the CPA. RCW 19.86.010(1).

118.    As alleged above, Defendant violated CEMA by initiating the transmission of commercial electronic mail messages to Plaintiffs and Class members that contained false or misleading information in the subject line.

119.    A violation of CEMA is a per se violation of the CPA. RCW 19.190.030(1).

120.    A violation of CEMA establishes all elements of the CPA as a matter of law.

121.    As alleged more fully above, Defendant's transmission of commercial electronic mail messages to Plaintiffs and Class members that contained false or misleading information in the subject line also violates the CPA because it constitutes unfair or deceptive practices that occur in trade or commerce.

Unfair Acts or Practices

122.    As alleged in detail above, Defendant committed "unfair" acts by falsely stating in email subject lines that it was offering a discount off the regular prices of its Products, and that customers

20

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

could receive that discount by purchasing during the sale period, or by advertising fake time limits for its purported discounts, when none of this was true.

123.    The harm to Plaintiffs and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting whether Products are discounted and misrepresenting the duration of sales. Plaintiffs' and the Class's injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumers only injures healthy competition and harms consumers.

<u>Deceptive Acts or Practices</u>

124.    As alleged in detail above, Defendant's representations in email subject lines that its Products were on sale, that the sale was limited in time, and that the customers were receiving substantial discounts are deceptive.

125.    Defendant's representations were likely to deceive, and did deceive, Plaintiffs and other reasonable recipients. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

126.    Defendant's unfair or deceptive acts or practices vitally affect the public interest and thus impact the public interest for purposes of applying the CPA. RCW 19.190.030(3); RCW 19.190.100.

127.    Defendant's acts and omissions caused injury to Plaintiffs and Class members. In addition, violations of CEMA establish the injury and causation elements of a CPA claim as a matter of law.

128.    Under the CPA, "[p]rivate rights of action may … be maintained for recovery of actual damages, costs, and a reasonable attorney's fee. A private plaintiff may be eligible for treble damages," and "may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction) (internal citations omitted); RCW 19.86.090.

129.    Under the CPA, Plaintiffs and Class members are entitled to seek, and do seek, the greater of actual damages and statutory damages of $500 per email that violates CEMA. In addition, Plaintiffs and Class members seek treble damages, which are permitted under the CPA, including for

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

CEMA violations. Plaintiffs seek treble damages to further Plaintiffs' and Class members' financial rehabilitation, encourage citizens to bring CPA actions, deter Defendant and other persons from committing CEMA violations, and punish Defendant for its false and misleading advertising practices.

130.    Plaintiffs and Class members are also entitled to, and seek, injunctive relief prohibiting Defendant's further violations of the CPA.

## VII.    Jury Demand.

131.    Plaintiffs demand the right to a jury trial on all claims so triable.

## VIII.    Prayer for Relief.

132.    Plaintiffs seek the following relief for themselves and the proposed Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiffs and the proposed Class;
- The greater of actual or statutory damages, treble damages, and punitive damages where applicable;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

1    Dated: January 9, 2026                    Respectfully submitted,

2                                              By: */s/ Jonas B. Jacobson*
3                                              Jonas B. Jacobson (WSBA #62890)
                                               jonas@dovel.com
4                                              Simon Franzini (WSBA # 63689)
                                               simon@dovel.com
5                                              Martin Brenner (Admitted *Pro Hac Vice*)
                                               martin@dovel.com
6                                              DOVEL & LUNER, LLP
                                               201 Santa Monica Blvd., Suite 600
7                                              Santa Monica, California 90401
                                               Telephone: (310) 656-7066
8                                              Facsimile: +1 (310) 656-7069

9                                              Cody Hoesly (WSBA #41190)
10                                             choesly@bargsinger.com
                                               BARG SINGER HOESLY PC
11                                             121 SW Morrison St., Ste. 600
                                               Portland, OR 97204
12                                             Ph. (503) 241-3311

13                                             Lynn A. Toops *
14                                             Natalie A. Lyons*
                                               Ian R. Bensberg*
15                                             **COHENMALAD, LLP**
                                               One Indiana Square, Suite 1400
16                                             Indianapolis, IN 46204
                                               Tel.: (317) 636-6481
17                                             ltoops@cohenmalad.com
                                               ibensberg@cohenmalad.com
18

19                                             J. Gerard Stranch, IV*
                                               Michael C. Tackeff*
20                                             **STRANCH, JENNINGS** &
                                               **GARVEY, PLLC**
21                                             223 Rosa L. Parks Avenue, Suite 200
22                                             Nashville, TN 37203
                                               Tel.: (615) 254-8801
23                                             gstranch@stranchlaw.com
                                               rntackeff@stranchlaw.com
24

25                                             Samuel J. Strauss WSBA#46971
                                               Raina C. Borrelli*
26                                             **STRAUSS BORRELLI, LLP**
                                               980 N. Michigan Avenue, Suite 1610
27                                             Chicago, IL 60611

CONSOLIDATED AMENDED                23         Dovel & Luner, LLP
CLASS ACTION COMPLAINT                         201 Santa Monica Blvd., Suite 600
Case No. 3:25-CV-05840-JNW                     Santa Monica, CA 90401
                                               (310) 656-7066

Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

Walter Smith, WSBA #46695
**Smith** & **Dietrich Law Offices, PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Telephone: (360) 915-6952
Email: walter@srnithdietrich.com

*Counsel for Plaintiffs*
*\*Pro Hac Vice* application forthcoming

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

24

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

**Exhibit A**

| Date | Subject Line |
|------|-------------|
| May 27, 2024 | Last Call!! Up to 62% Off |
| May 28, 2024 | It ain't over yet! The sale goes through Sunday. |
| September 2, 2024 | Final hours to save this Labor Day! |
| September 3, 2024 | Extended Sale Alert! |
| October 28, 2024 | Last Call for Epic deals! |
| November 1, 2024 | Ends Sunday: Up to 75% off! |
| November 29, 2024 | Final Hours Up to 68% Off |
| November 30, 2024 | Last chance! Up to 68% off |
| November 30, 2024 | Kiss these deals goodbye soon! |
| December 9, 2024 | It starts now! 4 days of holiday deals! |
| December 12, 2024 | Final Hours Up to 56% off |
| December 16, 2024 | Ho Ho Hurry! Top tech gifts up to 56% off! |
| February 19, 2025 | Final Hours |
| February 21, 2025 | Extended Weekend Sale |
| March 21, 2025 | You unlocked an extra 5% off sitewide. |
| March 28, 2025 | Extra 5% off sitewide ends Sunday. |
| April 4, 2025 | Up to 49% off, Giveaways, & More! |
| April 11, 2025 | Final Days Up to 49% off |
| April 14, 2025 | Our 4-Day Sale event starts now! |
| April 17, 2025 | Last call! 4-Day Sale ends tonight |
| April 25, 2025 | ThinkPads up to 50% off?! Did we hit Ctrl+Alt+Deal? |

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

25

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

| May 5, 2025 | Save up to 50% |
|---|---|
| May 9, 2025 | Tick, tock Up to 45% Off select Think PCs |
| May 12, 2025 | Early Access: Save Up to 54% |
| May 23, 2025 | Ends Sunday Up to 54% Off + 2x Rewards Sitewide |
| May 28, 2025 | Less than 24 Hours left |
| May 30, 2025 | Up to 54% Off—and then some |
| June 20, 2025 | Summer deals are ending... |
| June 23, 2025 | The clock is ticking... |
| June 26, 2025 | Going, going…  gone. |
| July 14, 2025 | Almost gone! |
| July 15, 2025 | Ending Soon |

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
Case No. 3:25-CV-05840-JNW

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066